IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Brandon Martel Williams,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **1:20cv255 (AJT/TCB)** |
| | ) | |
| **Harold W. Clarke,** | ) | |
| **Respondent.** | ) | |

MEMORANDUM OPINION

Under consideration is respondent Harold Clarke's motion to dismiss Virginia inmate

Brandon Martel Williams's petition for writ of habeas corpus, which was filed under 28 U.S.C. §

2254.  See Dkt. Nos. 19-21.  Respondent asserts in his motion that the petition is untimely and

otherwise without merit.  Id.  Petitioner opposes the motion.  See Dkt. No. 26.  For the reasons

explained below, the motion to dismiss must be granted, and the petition dismissed.

**I.  Background**

Petitioner is in custody pursuant to a final order, entered July 19, 2016, of the Circuit

Court of Southampton County.  See CR16000078, -79.  After a jury found petitioner guilty of

abduction and misdemeanor assault of a family member—violations, respectively, of sections

18.2-47(A) and 18.2-57.2 of the Virginia Code—the circuit court sentenced petitioner to three

years, twelve months' incarceration.  Id.  Petitioner appealed his convictions to the Court of

Appeals of Virginia, which denied the appeal on February 2, 2017.  See Record No. 1288-16-1.

Petitioner did not file a direct appeal with the Supreme Court of Virginia.

On June 12, 2018, petitioner filed a petition for writ of habeas corpus in the Virginia

Supreme Court, raising six claims.  See Record No. 180806.  The state supreme court dismissed

the petition by order dated March 7, 2019.  Id.  Almost exactly twelve months later, on March 6, 2020, petitioner filed the instant petition, raising the six following claims[1], verbatim:

1. The evidence at trial was constitutionally and legally insufficient to support the conviction and sentence of abduction and assault and battery of a family member where the Commonwealth's evidence rested solely on the completely unreliable and contradictory testimony of the alleged victim and where said alleged victim has previously fabricated similar allegations regarding the petitioner.

2. The petitioner's rights to fair trial and due process of law was violated where the Commonwealth suppressed and failed to disclose a key photograph of the alleged victim's neck showing no injuries in violation of the Brady doctrine and where the petitioner was prejudiced as a result.

3. The trial court violated the petitioner's right to due process of law by not admitting into evidence a written statement made by the alleged victim admitting she had recently fabricated similar allegations against Williams and where the petitioner was prejudiced as a result.

4. The petitioner received constitutionally deficient assistance of counsel where trial counsel failed to object to the hearsay testimony of several witnesses and where there is no reasonable basis for trial counsel's failure and where the petitioner was prejudiced as a result.

5. The petitioner received constitutionally defective assistance of counsel where trial counsel failed to gather and subpoena evidence and witnesses at the petitioner's request for the purposes of impeaching the complaining witness and where there is no reasonable basis for trial counsel's failure and where the petitioner was prejudiced as a result.

6. The petitioner received constitutionally deficient assistance of counsel where appellate counsel improperly withdrew from his representation without securing a replacement and

---

[1] The petition and petitioner's subsequently filed traverse offer differing accounts as to which claims petitioner truly seeks to raise in the instant action.  In his petition, where prompted to list Grounds One through Four, petitioner directs the Court to "Exhibit E."  See Dkt. No. 3.  Exhibit E contains only a copy of a letter from petitioner to his trial counsel in which petitioner requested an expert witness and a surveillance video from a 7-11 store.  See Dkt. No. 3-2, p. 3.  Another exhibit, meanwhile, lists six identifiable claims for relief.  See Dkt. No. 3-2, pp. 5-6.  Yet more confounding is the fact that, in his traverse, petitioner states that, "[i]n petitioner federal habeas [sic] … petitioner raise[s] only one claim," that he "received constitutionally deficient assistance of counsel where trial counsel failed to gather and subpoena evidence and witnesses at the petitioner's request."  See Dkt. No. 26, p. 2.  Despite the confusing presentation of the arguments, in deference to petitioner's pro se status, the Court will assess each claim listed in the exhibits of the petition, including the ineffective assistance claim, which is the fifth ground included there.

coerced the petitioner to sign a fraudulent statement withdrawing his appeal and where there is no reasonable basis for appellate counsel's failure and where the petitioner was prejudiced as a result.

See Dkt. No. 3-2, pp. 5-6.

## II.  Statute of Limitations

Respondent first contends that the § 2254 petition is untimely.  See Dkt. No. 21, pp. 4-7.

Habeas petitions filed under § 2254 are subject to a one-year period of limitation.  28 U.S.C.

§ 2244(d)(1).  This limitation period begins running from the latest of four possible dates:

> (A) the date on which the [challenged] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  On this basis, unless subsections (B), (C), or (D) apply, the one-year limitation period begins running when direct review of a petitioner's state conviction is completed or when the time for seeking direct review expires.

Under certain circumstances, however, the running of the one-year limitations period is suspended.  The clock stops, for instance, for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  The limitation period is also subject to equitable tolling in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party."  Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000).  Finally, a colorable claim of actual

innocence may entitle a petitioner to review of an untimely petition.  See McQuiggin v. Perkins, 569 U.S. 383 (2013).

Here, petitioner's criminal judgment became final on Monday, March 6, 2017, the last day on which petitioner could have filed a petition for review of the Court of Appeals of Virginia's February 2, 2017 denial of his direct appeal.  See Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . .") (citing 28 U.S.C. § 2244(d)(1)(A)); Va. Sup. Ct. R. 5:17(a)(2) (allowing thirty days to file a petition for appeal from the Court of Appeals of Virginia).  Consequently, the limitation period began to run on March 7, 2017.

Petitioner did not file his state habeas petition until June 12, 2018, 463 days after the limitation period started and 98 days after it closed.  Petitioner's filing of the state habeas petition, then, did not toll the statute of limitations relevant to § 2254 cases.  Cf. Claiborne v. Dir. Of Dep't of Corrs., No. 3:11cv368, 2012 WL 859559, at *3 (E.D. Va. Mar. 13, 2012) ("Claiborne did not file any of his three state court habeas petitions prior to the expiration of the AEDPA one-year statute of limitations.  Thus, none of these petitions could toll the AEDPA statute of limitations.").  Petitioner does not argue that he is entitled to relief under subsections (B), (C), or (D) of § 2244(d)(1), nor can the Court discern any evidence that he is so entitled.  Consequently, the petition is untimely unless petitioner can establish that he is entitled to equitable tolling or is actually innocent of the charges underlying the convictions he contests.

Petitioner makes no claim of actual innocence, and he has therefore not established that he is entitled to relief under this doctrine.  Petitioner's argument as to equitable tolling, though ultimately also unavailing, requires additional discussion.  As noted above, equitable tolling is

4

available only in rare instances.  To demonstrate an entitlement to this remedy, a petitioner must show that he was "pursuing his rights diligently, and … that some extraordinary circumstance stood in his way" of filing a timely petition.  Holland v. Florida, 560 U.S. 631, 649 (2010).

In his traverse, petitioner states that "mental incompetence" was the cause of his failure to abide by the statute of limitations relevant to § 2254 actions.  See Dkt. No. 26, p. 8.  He claims to have been "taken [sic] medication in 2019 at Nottoway State Corrections in Virginia D.O.C."  Id.  He further states that he "was dealing with mental health in 2019."  Id.

In the abstract, a petitioner's mental health may constitute a basis to invoke the doctrine of equitable tolling; however, "[a]s a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004).  Indeed, "proof of an existing mental illness, or claims that a petitioner is taking psychiatric medication or is under psychiatric care will not automatically warrant equitable tolling."  Robison v. Hinkle, 610 F. Supp. 2d 533, 539 (E.D. Va. 2009); see also McSwain v. Davis, 287 F. App'x 450, 456 (6th Cir. 2008) ("[M]ental incompetence is not a per se reason to toll a statute of limitations.").

The Fourth Circuit does not appear to have delineated specific criteria for determining whether a petitioner suffers from mental incapacity that warrants equitably tolling the statute of limitations in a habeas case.  Other courts, however, consider some of the following factors:

1. Whether the petitioner has been declared incompetent in a legal adjudication.  See McCray v. Oxley, 553 F. Supp. 2d 368, 373 (D. Del.2008); Lawless v. Evans, 545 F. Supp. 2d 1044, 1049 (C.D. Cal. 2008).

2. Whether the petitioner was "able to pursue legal action during the period of his or her alleged incapacity."  Smith v. Saffle, 28 F. App'x 759, 760 (10th Cir. 2001); see also United States v. Sosa, 364 F.3d at 513; Robison, 610 F. Supp. 2d at 540.

3. Whether the severity of symptoms and response to treatment as reflected in petitioner's medical records, if available, evidence an inability to timely file a habeas corpus petition. See Lawless, 545 F. Supp. 2d at 1049–50.

As just noted, in his traverse, petitioner states that his mental health posed problems for him in the year 2019.  The Court does not doubt the veracity of petitioner's statements, but these allegations do not explain why petitioner failed to file either a state or federal petition for writ of habeas corpus within one year of his state conviction becoming final; these omissions occurred in 2017 and 2018, times during which petitioner makes no claim to have been suffering from difficulties associated with his mental health.

Nor do the factors listed above resolve in favor of granting petitioner equitable tolling in this matter.  First, the medical records plaintiff has submitted in support of his position state explicitly that, although petitioner undeniably struggled with his mental health, he "did not meet the standard for insanity in Virginia" at the time of a probation violation in 2014.  See Dkt. No. 26-2, p. 7.  The records do not otherwise state that petitioner has previously been deemed incompetent.

The second listed factor also resolves against petitioner because it is clear that petitioner was "able to pursue legal action" in the period immediately following the denial of his direct appeal.  See Case No. 1:17cv598 (AJT/MSN) (filed on May 15, 2017, two months after § 2244(d) limitations period began to run).

Finally, the records, which admittedly predate petitioner's habeas petitions, do not "evidence an inability to timely file a habeas corpus petition."  The records instead state that, at the time of a 2014 psychiatric evaluation, petitioner exhibited "[n]o evidence of … hallucinations, delusions, or thought disorder."  Dkt. No. 26-2, p. 6.  They further stated that petitioner "gave pertinent, well-elaborated responses to queries … was composed, … generally

positive, with superficial sanguinity and some humor." Id.  The Court additionally notes that petitioner filed his federal habeas petition just one day shy of a year after his state habeas petition was denied, potentially demonstrating a capacity—albeit one based on a flawed understanding of the relevant law—to comply with statutes of limitations for federal habeas corpus petitions.  That petitioner misunderstood the intricacies of the federal filing requirements is regrettable but does not represent a basis on which to grant equitable tolling.  See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.") (citing Cross-Bey v. Gammon, 322 F.3d 1012, 1015 (8th Cir. 2003)).

Because 28 U.S.C. § 2244(d) establishes a clear limitation period with prescribed tolling provisions, equitable tolling is reserved for those extraordinary circumstances in which it would be unconscionable to strictly apply the statute of limitations.  See Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008).  Taken as a whole, the mental health records petitioner has provided in support of his claims suggest that he benefits from treatment and is capable of clear communication with others.  See Dkt. No. 26-2.  Accordingly, the Court finds that the record does not demonstrate that plaintiff is entitled to equitable tolling in this action.  His petition is therefore untimely and deniable as such.

## III.  Exhaustion and Procedural Default

Respondent next asserts that two of petitioner's grounds for relief are procedurally defaulted and therefore unreviewable.  Before a state prisoner may file in federal court a petition for a writ of habeas corpus, the prisoner must first exhaust his claims in the state court system.  28 U.S.C. § 2254(b)(1)(A).  Indeed, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In

Virginia, to exhaust state remedies, "a petitioner must present the same factual and legal claims

raised in the [federal] petition to the Supreme Court of Virginia either by way of (i) a direct

appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state

habeas petition." Sparrow v. Dir., Dep't of Corr., 439 F.Supp.2d 584, 587 (E.D. Va. 2006).

A successfully exhausted claim may nevertheless be deemed "procedurally defaulted"

and barred from federal review if a state court denies that claim pursuant to an independent and

adequate state law ground. See Harris v. Reed, 489 U.S. 255, 259 (1989).  And a federal habeas

court may deem a claim not presented to the highest state court exhausted and barred from

review "if it is clear that the claim would be procedurally barred under state law if the petitioner

attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

Federal habeas petitioners may overcome procedural bars and receive review of their claims

through a showing of cause and prejudice, see Gray v. Netherland, 518 U.S. 152, 162 (1996), or

actual innocence, see McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).

Claims One and Three are procedurally barred.  In Claim One, petitioner alleges that the

evidence at trial was constitutionally and legally insufficient to support the conviction and

sentence entered against him. See Dkt. No. 3-2, p. 5.  In Claim Three, petitioner contends that

the trial court abused its discretion by refusing to admit into evidence the victim's journal entry

in which she allegedly admitted to previously fabricating charges against petitioner similar to

those he faced in the trial at issue.  Petitioner raised each of these claims on direct appeal in the

Court of Appeals of Virginia but failed to appeal the decisions to the state supreme court.  The

Supreme Court of Virginia determined that these claims were barred because the issue could

previously have been raised there but was not.  In Virginia, "[a] claim that could have been

raised at the criminal trial or on direct appeal is not cognizable in habeas corpus because to do so would circumvent the trial and appellate process for non-jurisdictional defects." Henry v. Warden, 265 Va. 246, 576 S.E.2d 495, 496 (Va. 2003) (citing Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680, 682 (1974)). And because under federal law a district court is not at liberty to question a state court's application of a state procedural rule if the ruling is based upon an adequate and independent state ground, this Court finds Claims One and Three procedurally barred. See Williams v. French, 148 F.3d 203, 209 (4th Cir.1998).[2]

## IV.  Merits

### A.  Standard of Review

To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). But the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's authority to grant such relief. Pursuant to AEDPA, when a state court has addressed the merits of a claim raised in a subsequent federal habeas corpus petition, the reviewing federal court may not grant the petition on that particular claim unless the state court's adjudication was (1) contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2). The question, then, "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

---

[2] As noted above, plaintiff raises no actual innocence claim and has failed to demonstrate cause and prejudice for his default.

A state court's decision is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A federal court should grant relief under the "unreasonable application" clause if it finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

In determining whether a state court's decision was based on an unreasonable determination of facts, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). "The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was 'too powerful to conclude anything but [what the petitioner claims],' and when a state court's finding was 'clearly erroneous.'" Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1294 (11th Cir. 2015) (quoting Miller–El, 545 U.S. at 265).

**B.   Analysis**

   *1.   Claim One – Sufficiency of the Evidence*

As noted above, Claim One—an evidentiary sufficiency claim—is procedurally barred. Even if it were not, however, petitioner would not be entitled to relief because the claim is without merit.

Federal habeas petitions that assert there was insufficient evidence to support a state court conviction should be granted only if "no rational trier of fact could have found proof of

[petitioner's] guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979).

A federal court may only overturn a state court decision if that decision was "objectively

unreasonable;" it may not overturn the decision simply because it disagrees with the outcome.

<u>Cavazos v. Smith</u>, 565 U.S. 1, 3 (2011) (quoting <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010)).

Indeed, a reviewing federal court must ask whether, "after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (citing <u>Johnson v. Louisiana</u>,

406 U.S. 356, 362 (1972)).

Here, petitioner was convicted of two charges: (1) abduction and (2) assault and battery

of a family or household member.  In Virginia, an accused is guilty of abduction if he or she, "by

force, intimidation or deception, and without legal justification or excuse, seizes, takes,

transports, detains or secretes the person of another, with the intent to deprive such other person

of his personal liberty . . . ." Va. Code § 18.2-47(A).  Meanwhile, the term assault and battery

draws its definition from common law.  In Virginia , "[a]n assault and battery is an unlawful

touching of another.  It is not necessary that the touching result in injury to the person.  Whether

a touching is a battery depends on the intent of the actor, not on the force applied." <u>Gnadt v.

Commonwealth</u>, 27 Va. App. 148 (1998).  If an accused commits such acts against a family or

household member, he is guilty of this offense.

The Court of Appeals of Virginia summarized the evidence presented as follows:

[T]he evidence proved that on September 14, 2015, appellant came to
Southampton County and stayed at the Palm Tree Inn with Courtney Ashe and
their two children.  Ashe testified that they went to bed around 10:00 or 10:30
p.m., but that she was uncomfortable with all four individuals sharing one full-
size bed, so she got out of bed and went to the bathroom to smoke a cigarette and
watch videos.  After about an hour, appellant burst into the bathroom, upset that
Ashe was not in bed with him.  The two began to argue, and Ashe said to
appellant, "I hope my kids never turn out like you."  Appellant told Ashe to repeat

herself, and after she did, he grabbed her by the neck with both hands and began choking her.  Ashe testified that appellant choked her for three to five seconds, hard enough that she had to struggle to say, "let me go."  Appellant then "threw" Ashe against an air conditioning unit, breaking a piece of the unit and scraping Ashe's arm in the process.

Ashe testified that she tried to appear calm for the children by straightening up the room and folding clothes while continuing to argue, but appellant became upset again and punched the right side of Ashe's face with a closed fist.  She stumbled from the force of the blow and tried to get away from appellant by running into the bathroom, repeatedly closing the door.  Ashe placed her right foot in front of the door to try and brace it open long enough for her to get inside, but appellant slammed it shut, grazing her bare foot.  When Ashe cried out in pain, appellant "stomped" on her foot.

Ashe then attempted to get herself and the children dressed so they could leave, but each time she picked up an item of clothing, appellant would grab it and take it from her.  Ashe testified that this occurred about five times.  Appellant refused to let Ashe get dressed or to let her dress the children, and he told her, "You're not going any fucking where."  Ashe got back into bed with the children and attempted to text someone to come to the hotel and get her, but appellant grabbed the cell phone from her and threw it, breaking the screen.

Eventually, after appellant fell asleep, Ashe began getting dressed again.  She testified that by about 9:00 a.m., appellant awoke and prepared to check out of the hotel.  Ashe and the children left with appellant, but she told him to stop at a gas station to get juice.  Appellant stopped at a Sunoco, and Ashe went in alone. After getting juice for the children, Ashe asked the cashier, Candy Nichols, to call 911 because she had just been assaulted.  She testified that she was describing appellant's silver Volvo to Nichols when appellant got out and started walking into the store.  Ashe rushed out before appellant came inside, and they got back in the car and left the parking lot.  Nichols testified that Ashe had looked "shaken up" and "nervous" when she came in the store and that Ashe asked her to call the police, but after glancing out and seeing appellant outside of the car, Ashe told Nichols not to worry about it and left the store.

A short time later, Ashe asked appellant to stop at a 7-Eleven for cigarettes.  In the 7-Eleven, she asked to use the phone but was told that it was not for use by the public.  Ashe went back outside to the car and argue with appellant to let her drive.  She testified that he told her to drive to some apartments down the street, but Ashe was afraid and did not know the area, so she instead drove back to Suffolk.

The next day, Ashe contacted the Southampton County Sheriff's Office about the incident and met with Deputy B.W. Turner.  She explained the events that took place at the hotel and showed Turner her injuries.  Turner photographed the

laceration on her right arm, a bruise on her left forearm, and the scrape and swelling of her right foot.  These photographs were introduced at trial.  After Ashe's report, Turner went to the hotel room where appellant and Ashe had stayed, and he found that the cover for the air conditioning unit was in fact broken consistent with Ashe's recollection.  Turner photographed the air conditioning unit, and this photograph was also introduced at trial.

The day after Ashe reported the incident to the police, she sought medical attention because she thought her foot was broken.  Jessica Peppers, on duty as a triage nurse at Sentara Obici Hospital, examined Ashe as part of a general assessment to determine if Ashe needed emergency care with regard to her foot.  At trial, Peppers could not recall any mention of neck pain, but did recall that Ashe reported trouble breathing that may have been due to anxiety.  However, Ashe testified that she experienced soreness and stiffness in her neck for two to three weeks following the incident.

At trial, appellant confronted Ashe on cross-examination with a letter she had written dated January 11, 2016 regarding a prior incident where she recanted a report that appellant assaulted her.  The letter was read aloud in the presence of the jury, and it stated:

> We encountered each other in the early morning of July 7, 2015, when I reported that my ex had assaulted me, spit in [sic] face, punched me on the left side of my face while holding our child.  In a fit of childish range [sic] I allowed my emotions to get the best of me and I fabricated the entire story.

Ashe admitted that she wrote the letter "journaling" the past event, but testified that she did not intend to send it to anyone.  The Commonwealth objected to the letter's introduction into evidence.  The trial court sustained the objection, finding the letter irrelevant.  The court then explained to the jury that the contents of the letter had been read into the record, but the letter would not be an exhibit to be taken into the jury room once the jury retired for deliberations.  Ashe subsequently testified that she recanted her report because she wanted to keep her family together and that appellant had promised he would not hit her again if she dropped the charges.

Record No. 1288-16-1.

It is abundantly clear that the evidence presented to the jury was sufficient such that a

"rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable

doubt."  See Jackson, 443 U.S. at 319.  Accordingly, Claim One is denied.

2.      *Claim Two – Failure to Disclose Exculpatory Evidence*

In Claim Two, petitioner asserts that the Commonwealth failed to disclose exculpatory

evidence, namely a photograph of the victim's neck which did not depict any injuries.  The

Supreme Court of Virginia denied petitioner relief with respect to this claim, finding as follows:

> [I]n light of the other evidence at trial, the photograph does not satisfy the third
> component necessary to establish a violation of the *Brady* disclosure rule,
> materiality.  *See Hicks v. Dir., Dep't of Corr.*, 289 Va. 299 (2015) (withheld
> evidence is material when it could reasonably be taken to put the whole case in
> such a different light as to undermine confidence in the verdict).  The record,
> including the trial transcript and the affidavit of the prosecutor, Christopher Bell,
> demonstrates the victim, Courtney Ashe, testified that, early in the morning of
> September 15, 2015, she was staying in a hotel with petitioner and their two small
> children when petitioner grabbed her by the neck with both hands and coked her
> for "three to five seconds."  Ashe further testified petitioner pushed her against an
> air conditioning unit, breaking the cover place to the control panel and lacerating
> her right forearm.  She also testified petitioner punched her with his closed fist on
> the right side of her face, closed the bathroom door as she tried to enter the
> bathroom resulting in a "graze" injury to the side of her right foot, "stomped" on
> her right foot with his foot while he wore sneakers, broke her cell phone, and
> prevented her from leaving the hotel room.  Ashe reported the incident to Deputy
> Turner at 8:25 p.m. on September 16, 2015.  Turner testified he observed a
> laceration and bruise to Ashe's right arm, a bruise to her left arm, and redness and
> swelling to her right foot.  Turner photographed these injuries and the
> photographs were shown to the jury.  Turner also inspected the hotel room and
> observed that the cover plate to the controls for the air conditioning unit had been
> broken and separated from the unit.  At approximately 10:00 p.m. on September
> 16, 2015, Ashe went to a hospital emergency room where she was examined by a
> triage nurse, Jessica Peppers, who petitioner called as a witness.  Peppers read her
> notes to the jury which demonstrated Ashe reported only that "her boyfriend
> stomped on her right foot and punched her in the face."  Moreover, the jury did
> not find petitioner guilty of strangulation, but found him guilty of the lesser
> included charge of assault and battery which the trial court dismissed on the
> Commonwealth's motion.  Assuming the Commonwealth failed to disclose the
> photograph, which Bell denied in his affidavit, petitioner fails to demonstrate
> there is a reasonable probability that, had the photograph been disclosed, the
> result of the proceeding would have been different.  See Tuma v. Commonwealth,
> 285 Va. 629, 634-35 (2013) (evidence is material when there is a reasonable
> probability that, had the evidence been disclosed, the result of the proceeding
> would have been different).

Record No. 180806.

This ruling was not contrary to or an unreasonable application of federal law.  See United States v. Bagley, 473 U.S. 667, 682 (1985) ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").  Nor was the decision based on an unreasonable determination of the facts of the case.  Accordingly, Claim Two is without merit and must be dismissed.

3.      _Claim Three – Trial Court's Refusal to Admit Evidence_

As noted above, Claim Three is procedurally barred and therefore offers petitioner no relief.  The claim is nevertheless without merit.  Indeed, the state court's decision not to admit the victim's previous recantation letter presents only a state law question concerning the admissibility of evidence.  Such rulings are not subject to federal habeas review unless they are "so extreme as to result in a denial of a constitutionally fair proceeding."  Burkett v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000).  This was not the case.  Although the letter itself was not admitted, its contents were read to the jury, and the jury was informed that it could consider the contents—which Ashe admitted to authoring—as part of the evidentiary record.  See Case No. CR16000078, -79.  In this light, the Court finds that the trial court's decision not to admit the victim's letter did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted).  Accordingly, Claim Three is denied.

4.      _Claims Four Through Six – Ineffective Assistance of Counsel_

In Claims Four through Six, plaintiff alleges that he was denied the effective assistance of counsel.  To prevail as to an ineffective assistance of counsel claim, a petitioner must first demonstrate that his attorney's performance was deficient and second demonstrate that the

deficient performance prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668 (1984).  To satisfy the deficient performance prong, the convicted defendant must overcome the "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance."  Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (internal quotations omitted).  The prejudice component requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland at 694.

"Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable [or contrary to clearly established federal law] under § 2254(d) is all the more difficult."  Harrington v. Richter, 562 U.S. 86, 105 (2011).  Application of these two layers of deference effectively limits a federal court's review to a determination of "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

          i.      Claim Four

In Claim Four, petitioner asserts that he was denied the effective assistance of counsel in two capacities: (1) when trial counsel failed to make a hearsay objection when Candy Nichols, a clerk at a Sunoco station, testified to statements the victim made to her, and (2) when counsel failed to object to the alleged hearsay statements offered by triage nurse Jessica Peppers.

With respect to the first portion of this claim, the Supreme Court of Virginia denied petitioner relief, stating that the claim

> [F]ail[ed] to satisfy the 'prejudice' prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The record, including the trial transcript, demonstrates that, at approximately 9:00 a.m. on September 15, 2015, Ashe and petitioner left the hotel room with their children and petitioner drove them to a Sunoco convenience store.  Ashe testified she went inside the

store and asked Nichols to call the police because "my boyfriend just assaulted me." As Ashe described the car, Nichols advised her that petitioner was "coming" and Ashe left the store. Nichols testified Ashe entered the store, picked up some items to purchase, approached the counter and said, "I need you to call the cops, you know, I've got a situation." Nichols testified petitioner "had gotten out of the car, was just standing outside, wasn't bothering nothing," then Ashe said, "naw, he's watching, just don't worry about it and never mind." Nichols described Ashe as "nervous and shaking."

…

Assuming, without deciding, that counsel did not have a reasonable strategic or legal purpose for not objecting to Nichols's hearsay testimony, petitioner can nonetheless not show he was prejudiced. Ashe testified petitioner hit her, pushed her, grabbed her arm to prevent her from leaving, hit her foot with the door when she tried to go into the bathroom, and stomped on her foot, and there were photographs of Ashe's physical injuries and the damage to the motel room which were consistent with this testimony. Petitioner fails to satisfy his burden to show a reasonable likelihood of a different outcome on the charge of abduction or assault and battery but for counsel's error. *See Strickland*, 466 U.S. at 693 ("Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial."). Thus, petitioner has failed to demonstrate there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Record No. 180806.

With regard to the second portion of Claim Four, the state supreme court held petitioner

satisfie[d] neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates Ellenson called Peppers as a witness who testified Ashe did not complain of pain in her neck and Peppers did not observe any injury to her neck. On cross-examination, Peppers testified that, as a triage nurse, she performs a quick, general assessment of the issues that brought the patient to the emergency room, and that the emergency for Ashe was the injury to her foot. Peppers further testified Ashe "thought her right foot was broken because her boyfriend had stomped on her foot" and that she could not recall if Ashe said anything about her neck because her focus was on her foot. On re-direct examination, Peppers testified her triage notes were important and, at counsel's request, read her notes to the jury which revealed Ashe reported only that "her boyfriend stomped on her right foot and punched her in the face." In response to further questions from counsel, Peppers testified if Ashe had been physically in distress from having been choked or had bruising on her neck, she would have included that information in her triage notes. Under the circumstances, counsel could reasonably have determined there were good tactical reasons not to object to

Peppers' testimony regarding Ashe's chief complaint, as counsel was able to use that testimony, as well as similar testimony based on Peppers' notes, to demonstrate to the jury that Ashe did not have a neck injury or make a complaint about having been choked.  Such trial tactics were important for counsel in obtaining an acquittal on the strangulation charge.  *See Harrington v. Richter*, 562 U.S. 86, 107 (2011) ("Counsel [i]s entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Record No. 180806.

In the context of a § 2254 petition, "[j]udicial scrutiny of counsel's performance must be highly deferential," and a reviewing court must remember that counsel is "permitted to determine trial strategy, and press those claims with the greatest chance of success." Strickland at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014).  And even if counsel's failure to pursue the strategies petitioner now highlights was inadvertent, this does not per se constitute ineffective assistance.  Indeed, "[c]ounsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987) (citing Strickland at 689).  In this light, this Court finds that the state court's decision to dismiss petitioner's arguments in Claim Four was neither factually nor legally unreasonable.

ii.     Claim Five

In Claim Five, petitioner asserts that he was denied the effective assistance of counsel in two capacities: (1) when trial counsel failed to obtain security camera footage from a 7-Eleven store that would have shown that the victim went inside the store after leaving Sunoco but did not approach a police officer in that store and (2) when trial counsel failed to obtain petitioner's mental health records from Western Tidewater Regional Jail.

18

The Supreme Court of Virginia denied the first portion of this claim, holding that

[T]his portion of claim (5) fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, the affidavit of the prosecutor, and the affidavit of Ellenson, demonstrates Ashe testified that, after leaving the Sunoco, petitioner drove Ashe and their children to a 7-Eleven in Courtland where Ashe went inside to buy cigarettes. Ashe "asked to use their phone" because she wanted to call the police, but she was told public use of the phone was not permitted. When Ashe left the store, she refused to get inside the car unless petitioner allowed her to drive, which he did. Although petitioner asked Ashe to take him "to some apartments that were down the street," Ashe "turned around and headed back towards Suffolk." Ashe testified they stopped at another 7-Eleven in Suffolk to "get more cigarettes," stopped at a Hardees where they "talked about everything" and "argued more," went "to the Burger King off of Godwin Boulevard," then arrived at her grandmother's house at 7:00 p.m. Ashe also testified petitioner would not let her leave with their children and she did not want to leave their children with petitioner because she "was afraid of what he would do to [their] children" as he had "threatened [the] children before." Ashe further testified she did not call the police when she went inside her grandmother's house but waited until the next day. Ned Andrews, an assistant public defender, was initially appointed to represent petitioner in the juvenile and domestic relations district court ("JDR court"). Andrews applied for a subpoena duces tecum for the video surveillance tapes of the 7-Eleven in Courtland for the relevant time period, the clerk of the JDR court issued the subpoena duces tecum on October 16, 2015, and it was personally served on Alfran Gary, the store manager, on October 19, 2015. The video tapes were never received by the JDR court. On October 30, 2015, Andrews advised the prosecutor he was going to the 7-Eleven "to watch the videos" and would tell the 7-Eleven witness not to come to JDR court on the scheduled hearing date of November 5, 2015, as the case would be continued because petitioner's psychological evaluation had not been completed. The prosecutor states in his affidavit he does not know if Andrews was able to find any video surveillance showing Ashe in the 7-Eleven with a police officer or if Andrews viewed the video tape on site but decided not to use it for tactical reasons. Andrews left the public defender's office and Ellenson, another assistant public defender, represented petitioner in the circuit court. Ellenson sent the office's investigator to the 7-Eleven and discovered "[t]here were no surveillance tapes from the date in question." Even assuming a video-tape existed that revealed a police officer was present in the store when Ashe entered, petitioner does not proffer how long the officer was in the store, how much opportunity Ashe had to interact with the officer, or if Ashe was in view of the petitioner while she was in the store causing her to abandon any effort to seek assistance as she did in the Sunoco because of her fear of petitioner who could have left with their children. Further, given the ample evidence before the jury that Ashe did not seek assistance on multiple occasions and her explanations for her behavior, petitioner cannot show a reasonable probability any additional evidence of Ashe's failure to seek assistance would

have altered the outcome of his case. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Record No. 180806.

With regard to the second portion of Claim Five, the state supreme court stated as follows:

> [T]his portion of claim (5) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to proffer what the records would have revealed or how they would have been relevant evidence for the jury to consider in determining his guilt or innocence or in mitigation at sentencing. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Record No. 180806.

This Court finds that the state court's determinations were not contrary to federal law. Indeed, as the court noted, introduction of the video counsel allegedly failed to subpoena would have constituted mere cumulative evidence, and an attorney's failure to present cumulative evidence does not, generally speaking, constitute deficient performance. See Jenkins v. Comm'r, Ala. Dep't of Corr., 936 F.3d 1252, 1273 (11th Cir. 2019) (finding state court's conclusion that counsel was not ineffective for failing to present cumulative evidence "not unreasonable"). Additionally, it is well settled that a petitioner's failure to demonstrate the potential impact of unintroduced evidence spells the demise of his claim. See, e.g., Brizuela v. Clarke, 112 F. Supp. 3d 366, (E.D. Va. 2015) (upholding state court's denial of ineffective assistance claim where petitioner failed to "proffer the Internet records or any evidence of what they would have shown" and thus failed to satisfy Strickland). Claim Five is thus denied.

iii.    Claim Six

In Claim Six, petitioner avers that he was denied the effective assistance of counsel when his appellate attorney "improperly withdrew from his representation without securing a replacement and coerced the petitioner to sign a fraudulent statement withdrawing his appeal." See Dkt. No. 3-2, p. 6.  Denying this claim, the state supreme court held that

> [C]laim (6) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*.  The record, including the affidavit of appellate counsel, Edward Ferreira, the exhibits accompanying his affidavit, and the document petitioner signed, demonstrates Ferreira met with petitioner on February 7, 2017, five days after the Court of Appeals issued its per curiam order denying the appeal.  Ferreira discussed the order with petitioner, who agreed not to pursue the appeal "any further" and who signed a one-page typed document stating he had reviewed and discussed the per curiam order with his attorney and "[a]fter those discussions I have decided not to pursue this appeal any further." Ferreira attested he was not offered "a new job" until February 24, 2017 and filed a motion to withdraw on that day.  Therefore, the record clearly belies petitioner's claim that he thought he was requesting a new attorney when he signed the document.  The document petitioner signed is a simple and explicit statement that petitioner did not wish to appeal to this Court.  See Roe v. Flores-Ortega, 528 U.S. 470,477 (2000) ("At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Record No. 180806.

The state court's decision to deny petitioner relief with respect to Claim Six was not contrary to federal law or an unreasonable interpretation of facts.  Indeed, the record makes very clear that, on February 7, 2017, petitioner signed a statement indicating that he did not wish to appeal the Court of Appeals of Virginia's denial to the state supreme court.  See Record No. 180806, p. 45.  It was more than two weeks later—not until February 24, 2017—that petitioner's counsel moved to withdraw from representation.  Id. at p. 46.  Because petitioner agreed not to appeal before his counsel ever moved to withdraw from the case, counsel of course did not need

to find petitioner new counsel. Because petitioner's allegations do not withstand even meager scrutiny, there is no basis for offering him federal relief as to this claim. Claim Six is denied.

## V. Conclusion

For the foregoing reasons, petitioner is not entitled to federal habeas relief—the petition is untimely, in part procedurally-barred, and meritless in the first instance. Accordingly, respondent's motion to dismiss shall be granted. An appropriate order will issue.

Entered this _11th_ day of _Feb._ 2021.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge